| Case No. | **CV 20-7809-DMG (KSx)** | Date | December 15, 2020 |
|---|---|---|---|
| Title | *Casa Colina, Inc., et al. v. Hartford Fire Ins. Co., et al.* | Page | 1 of 7 |

Present: The Honorable   DOLLY M. GEE, UNITED STATES DISTRICT JUDGE

| KANE TIEN | NOT REPORTED |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiff(s) | Attorneys Present for Defendant(s) |
|---|---|
| None Present | None Present |

**Proceedings: IN CHAMBERS—ORDER RE PLAINTIFFS' MOTION TO REMAND [9]**

This matter is before the Court on Plaintiffs' Motion to Remand ("MTR"). [Doc. # 9.] The MTR is fully briefed. [Doc. ## 21–22.] For the reasons set forth below, the Court **DENIES** the MTR.

## I.
## BACKGROUND

On June 26, 2020, Plaintiffs Casa Colina Inc. and other associated Casa Colina entities,[1] who provide rehabilitative and medical-surgical services, filed a Complaint in Los Angeles County Superior Court against Defendants Hartford Fire Insurance Co. ("Hartford") and HUB International Insurance Services, Inc. ("HUB"). [Doc. # 1-2]. The Complaint alleges that Hartford breached its business interruption insurance policy with Plaintiffs by denying them coverage for losses caused by the COVID-19 pandemic. *Id.* at ¶¶ 48–71. The Complaint also alleges, in the alternative, a negligence cause of action against HUB, the broker that sold Plaintiffs the policy, for "failing to obtain the appropriate coverage as requested," "failing to accurately represent and report the coverage obtained," and "failing to properly warn Plaintiff of potential coverage limitations, gaps, or exclusions." *Id.* at ¶¶ 72–83.

On August 26, 2020, Hartford and HUB removed the action, asserting that this Court has diversity jurisdiction because the Plaintiffs are all citizens of California, Hartford is a citizen of Connecticut, and while HUB is also a citizen of California, it was fraudulently joined and so its citizenship should not be considered.[2] Not. of Removal [Doc. # 1].

---

[1] Plaintiffs include Casa Colina, Inc.; Casa Colina Hospital and Centers for Healthcare; Casa Colina Centers for Rehabilitation, Inc.; Casa Colina Comprehensive Outpatient Rehabilitation Services, Inc.; Casa Colina Centers for Rehabilitation Foundation, Inc.; Padua Village, Inc.; Casa Colina Medical Office Building, LLC; and Casa Colina Diagnostic Imaging Centers, LLC.

[2] Defendants also claim, and Plaintiffs do not dispute, that the amount in controversy exceeds $75,000.

Plaintiffs now move to remand, arguing that HUB is not a sham defendant, and so the parties are not diverse. *See* MTR. Hartford filed an Opposition to Plaintiffs' MTR on November 13, 2020. [Doc. # 21]. Plaintiffs filed a Reply in support of their MTR on November 20, 2020. [Doc. # 22.]

### III.
### LEGAL STANDARD

Diversity jurisdiction under 28 U.S.C. § 1332 requires that the parties to a suit be of diverse citizenship. *Diaz v. Davis (In re Digimarc Corp. Derivative Litig.)*, 549 F.3d 1223, 1234 (9th Cir. 2008) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 267 (1806)) ("Diversity jurisdiction requires complete diversity between the parties—each defendant must be a citizen of a different state from each plaintiff."). "A defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008) (internal citations omitted). There is a "strong presumption against removal jurisdiction," and courts must reject it "if there is any doubt as to the right of removal in the first instance." *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (*per curiam*)) (internal quotation marks omitted).

"[T]here is a general presumption against fraudulent joinder." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Yet, fraudulently joined defendants do not defeat removal on diversity grounds. *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)). A removing defendant must "show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant" and "that the plaintiff would not be afforded leave to amend his complaint to cure the purported deficiency." *Padilla v. AT&T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (internal citations omitted); *see also Rangel v. Bridgestone Retail Operations, LLC*, 200 F. Supp. 3d 1024, 1033 (C.D. Cal. 2016) (same).

## IV.
## DISCUSSION

Hartford argues that Plaintiffs do not and cannot establish a cause of action for negligence against HUB. In California, an insurance agent ordinarily only has an "obligation to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured." *Butcher v. Truck Ins. Exch.*, 77 Cal. App. 4th 1442, 1461 (2000) (quoting *Jones v. Grewe*, 189 Cal. App. 3d 950, 954 (1987) (collecting cases establishing that "an agent's failure to deliver the agreed-upon coverage may constitute actionable negligence and the proximate cause of an injury"). While insurance agents generally do not have "a duty to volunteer to an insured that the latter should procure additional or different insurance coverage," that rule does not apply when (1) the agent misrepresents the nature, extent, or scope of the coverage being offered or provided; (2) there is a request or inquiry by the insured for a particular type or extent of coverage; or (3) the agent assumes an additional duty by either express agreement or by "holding himself out" as having expertise in a given field of insurance being sought by the insured. *Fitzpatrick v. Hayes*, 57 Cal. App. 4th 916, 927 (1997).

Plaintiffs contend that all three exceptions are applicable here, and that because HUB took on such additional duties, their negligence claim against HUB is not fraudulent and the action should therefore be remanded back to Los Angeles County Superior Court. *See* MTR at 13–14.

### A.     Misrepresentation

Under the first exception, "[a]n insurance agent may assume a greater duty to the insured . . . by misrepresenting the policy's terms or extent of coverage." *Wallman v. Suddock*, 200 Cal. App. 4th 1288, 1309 (2011) (citing *Paper Savers v. Nasca*, 51 Cal. App. 4th 1090, 1096–97 (1996)). In other words, California law does not generally require insurance agents to advise insureds regarding the sufficiency of their coverage. *See Jones*, 189 Cal. App. 3d at 954. But "once they elect[] to respond to [specific] inquiries, a special duty ar[ises] requiring them to use reasonable care." *Free v. Republic Ins. Co.*, 8 Cal. App. 4th 1726, 1729 (1992). In cases where courts found agents assumed additional duties under this exception, "the insureds made specific factual inquiries of the agents, and the agents responded with specific factual representations." *Wallman*, 200 Cal. App. 4th at 1315. Conversely, courts have consistently found generalized statements that insureds would receive "adequate," "sufficient," or "full" coverage do not implicate additional agent duties. *See Fitzpatrick*, 57 Cal. App. 4th at 928*; Ahern v. Dillenback*, 1 Cal. App. 4th 36, 40 (1991); *Jones*, 189 Cal. App. 3d at 956.

Here, the only actual representation Plaintiffs allege is HUB's purported assurance that Plaintiffs would receive "full and adequate insurance." MTR at 15; Compl. at ¶¶ 76. This generalized statement is clearly insufficient to amount to a misrepresentation that would trigger a heightened duty.

Nor does it appear Plaintiffs can cure this deficiency with an amendment. To do so, HUB would have had to make affirmative, specific representations that the Policy would provide coverage in the event Plaintiffs' business was shuttered as a result of a viral pandemic. *See Wallman*, 200 Cal. App. 4th at 1315. Here, it is apparent from the additional allegations Plaintiffs propose adding to an amended pleading that they never discussed with HUB whether their insurance would provide coverage for a pandemic-induced closure. *See* MTR at 20 ("Despite discussing the issue of a natural disaster or power outage, HUB never disclosed that Plaintiffs would be left allegedly (and completely) uncovered in the event of a viral outbreak . . . .").

**B.    Request or Inquiry for a Particular Type or Extent of Coverage**

Plaintiffs also argue that insurance agents assume additional duties "when the agent negligently fails to disclose material information regarding the insurance requested by the insured." MTR at 13 (citing *Westrick v. State Farms Ins.*, 137 Cal. App. 3d 685, 691–693 (1982). Specifically, they allege that HUB "fail[ed] to properly warn Plaintiff[s] of potential coverage limitations, gaps, or exclusions." Compl. at ¶¶ 79.

But Plaintiffs misconstrue *Westrick* and the exception that evolved from it. *Westrick* does not create a general affirmative duty to warn of potential coverage gaps or exclusions absent a specific inquiry. As noted above, California law does not generally require insurance agents to advise insureds regarding the sufficiency of their coverage. *See Jones*, 189 Cal. App. 3d at 954; *see also Malcom v. Farmers New World Life Ins. Co.*, 4 Cal. App. 4th 296, 304 (1992) (discussing *Westrick* and finding it did not create an affirmative duty to advise about suicide exclusion when insured did not specifically ask whether coverage would be provided in the event of a suicide). Rather, *Westrick* simply stands for the proposition that if an insured directly inquires about whether their policy provides a specific type of coverage, an agent has a duty to explain any related limiting provisions. *Fitzpatrick*, 57 Cal. App. 4th at 927.

Thus, to bring this case within *Westrick*, Plaintiffs would need to allege that they specifically requested a policy that would provide coverage in the event their business was interrupted by a viral outbreak, or directly inquired about whether their policy provided such coverage. *See Fitzpatrick*, 57 Cal. App. 4th at 928 (generalized requests for adequate insurance insufficient). But Plaintiffs have made no such allegations. Nor can they in an amended pleading,

because, as discussed above, the allegations they propose adding indicate Plaintiffs and HUB never discussed the specific topic.

**C.     Holding Out Expertise**

Plaintiffs contend that "HUB held itself out as an expert in business interruption insurance and business policyholder insurance and in obtaining comprehensive insurance coverage . . . ." MTR at 14. Hartford responds that Plaintiffs allegations regarding its website materials, which include specific discussions of business interruption insurance, are "insufficient to constitute a 'holding out' triggering an elevated duty of care." Opp. at 15; *see also* Compl. at ¶ 74.

Plaintiffs are correct that "[a]n agent may assume additional duties to an insured by holding himself out as an expert; in such a case, the agent may be liable to the insured for losses that resulted from a breach of those additional duties." *Wallman*, 200 Cal. App. 4th at 1312. When analyzing whether an agent has held herself out as an expert, "courts must utilize a totality of the circumstances approach." *Murray v. UPS Capital Ins. Agency, Inc.*, 54 Cal. App. 5th 628, 648 (2020). In this context "the term 'holding out' encompasse[s] more than marketing tools (advertising and brochures)." *Id.*; *see also Fitzpatrick,* 57 Cal. App. 4th at 929 (finding a general brochure insufficient to constitute "holding out" of special expertise); *Hartford Cas. Ins. Co. v. Fireman's Fund Ins. Co.*, 220 F. Supp. 3d 1008, 1018 (N.D. Cal. 2016) (finding generalized statements regarding commercial umbrella insurance on website insufficient to constitute "holding out" of special expertise).

Here, the only "example" Plaintiffs allege of HUB holding itself out as an expert is its general promotion of business interruption insurance on its website. *See* Compl. at ¶ 74. As the case law clearly demonstrates, this does not amount to "holding out" expertise. Moreover, despite Plaintiffs' argument to the contrary, this is not a case where a presumption of expertise exists. *See* MTR at 14. Presumption of expertise exists for the "emerging group of highly specialized insurance brokers/agents," such as those that focus exclusively on providing a single type of specialized insurance, like the marine inland insurance provider in *Murray*, or "highly specialized policies, such as insuring body parts." *Murray*, 54 Cal. App. 5th at 649. There is no indication that HUB exclusively provides business interruption insurance, and even if there was, it is clear this is not the type of highly specialized insurance envisioned by the *Murray* court. *See id.*

Plaintiffs propose amending the Complaint to add that "HUB . . . has been the property insurance broker/agent for Plaintiffs for more than 20 years and is extraordinarily familiar with Plaintiffs line of business." MTR at 20. But "the mere assertion that [P]laintiffs purchased insurance from [HUB] for several years and followed [its] advice on insurance matters is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 20-7809-DMG (KSx)** | Date | December 15, 2020 |
|---|---|---|---|
| Title | *Casa Colina, Inc., et al. v. Hartford Fire Ins. Co., et al.* | Page | 6 of 7 |

insufficient to create a heightened duty." *Wallman*, 200 Cal. App. 4th at 1312; *see also Fitzpatrick*, 57 Cal. App. 4th at 927–28 (rejecting similar argument when agent was "appellant's source of insurance for 20 years."); *Jones*, 189 Cal. App. 3d at 956 (finding the fact that the insureds had purchased insurance from the agent for several years and followed his advice "insufficient to imply the existence of a greater duty.").

Plaintiffs also propose adding an allegation that "HUB had particular expertise in the business, operations, and operation statistics" of Plaintiffs, and that HUB "had touted their expertise at insuring such facilities and providing business interruption insurance." MTR at 21. It is true that "holding out" in this context "could be based on an agent's reputation as the 'go-to' specialist in a particular industry," and that "it can be reasonable to infer agents who customize insurance packages or sell exclusively to a distinct class of insured, by their actions, [are] proffering their expertise." *Murray*, 54 Cal. App. 5th at 648; *see also Williams v. Hilb, Rogal & Hobbs Ins. Servs. of Cal., Inc.*, 177 Cal. App. 4th 624, 637 (2009) (holding that the agent held herself out as having special expertise because there was an understanding that she "was 'the go-to person' for [its] insurance needs."). But Plaintiffs do not suggest HUB customized insurance packages specifically for rehabilitative and medical-surgical facilities, or that they sold exclusively to, or were known as the go-to providers for, such facilities. And even if HUB was the foremost expert in business interruption insurance for rehabilitative and medical-surgical services providers, this expertise would not allow them to predict Plaintiffs would require coverage for a once-in-a-lifetime viral pandemic causing government-mandated business closures. The "holding out" exception still requires some relationship between the purported expertise and the coverage needed. *See Williams*, 177 Cal. App. 4th at 647 (finding that the agent's expertise in insuring company that used toxic chemicals required her to offer workers' compensation coverage for bodily injury).

\* \* \*

In sum, the Court finds none of the exceptions to the general rule that agents have no duty to advise the insured on specific insurance matters are implicated by Plaintiffs' Complaint or their proposed amendments. In other words, "there is no possibility that [Plaintiffs] could prevail on any cause of action [they] brought against [HUB]." *Padilla*, 697 F. Supp. 2d at 1159. Therefore, without considering HUB's citizenship, Hartford's removal based on diversity jurisdiction was proper.

## V.
## CONCLUSION

In light of the foregoing, Plaintiffs' MTR is **DENIED**. Because the Court concludes that Plaintiffs cannot state a cause of action against HUB, the Court *sua sponte* **DISMISSES** the negligence claim against it, with prejudice.

**IT IS SO ORDERED**.